01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROMELLE BRADFORD,                    )   Case No. C07-365-JPD
                                     )
          Plaintiff,                 )
                                     )
     v.                              )
                                     )   ORDER REGARDING DEFENDANTS'
THE CITY OF SEATTLE, et al.,         )   MOTION FOR SUMMARY JUDGMENT
                                     )
          Defendants.                )
_____ )

## I.   INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983.  The plaintiff has made federal and state law claims against an arresting City of Seattle police officer, his superior, and the City itself.  Dkt. No. 6.  The present matter comes before the Court on the defendants' motion for summary judgment, which asserts that the police officer had reasonable suspicion to stop the plaintiff, probable cause to arrest him, and did both using reasonable force under the circumstances.  Dkt. No. 40 at 7-17.  Furthermore, the defendants insist that the officer is entitled to qualified immunity for his actions, and argue that the City of Seattle is not subject to municipal liability under § 1983.  *Id.* at 17-23.  The plaintiff disagrees, insisting that genuine issues of material fact prevent summary adjudication on all but one of his claims for relief.  Dkt. No. 42.  After careful consideration of the motions, supporting materials, the governing law and balance of the record, the Court ORDERS that defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART.

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 1

01              II.  FACTS AND PROCEDURAL BACKGROUND

02          On the night of August 4, 2006, the Rainier Vista Boys and Girls Club joined with the

03  Skyway Boys and Girls Club for a dance.  The event was scheduled to run from 9:00 p.m. to

04  midnight at the Rainier Vista Boys and Girls Club in Seattle, Washington (hereinafter "the

05  Club").  The plaintiff, Romelle Bradford, was the staff member in charge of the event.  For

06  events such as this, plaintiff and the entire staff donned solid red t-shirts with the Club's insignia

07  and "STAFF" screen-printed in white on the front of the shirts.[1]   On the night of the incident,

08  plaintiff was also wearing a staff identification tag hooked to a lanyard which swung from his

09  neck.  Organizing and supervising Club events such as dances was nothing new for the plaintiff,

10  who had been associated with the Club since he was fifteen years old.[2]

11          The dance proceeded as planned and, like most teenage dances, it was uneventful.

12  Plaintiff called for the last song at approximately 11:30 p.m., turned on the Club's lights

13  immediately thereafter, and began escorting members out the doors with the help of the staff.

14  Shortly thereafter, several Club staff members noticed a group of kids walking back to the Club

15  grounds with what were perceived to be hostile intentions toward a group that had just left the

16  dance.  Worried about a possible altercation, the staff members phoned the police and quickly

17  intercepted and dispersed the oncoming group before any officers arrived.  Dkt. No. 43, Ex. A

18  at 3.[3]   The parties agree that fights had occurred near the Club in the past, but that no fighting

19  ────────────────

20      [1]  The defendants do not dispute the existence of this shirt, but do dispute that plaintiff was
    wearing it at the time of the incident.  *See* Dkt. No. 44 at 2; *compare* Dkt. No. 41, Ex. A at 23
21  (Briskey Dep.) ("He had on a white sleeveless shirt and shorts."),      *with id.* Ex. C at 89-91
    (Bradford Dep.) (wearing red staff shirt until officer pulled it off), *and id.* Ex. B at 27 (Zerr Dep.)
22  (wearing red staff shirt upon arrival at precinct).  Consequently, the parties dispute the precise
    timing of when Officer Briskey realized plaintiff was a staff member of the Club.
23

24      [2]  Indeed, the plaintiff's public record is defined by positive, not negative, exploits.  He
    was selected the Club's Youth of the Year in 2002, King County Youth of the Year in the same
25  year, and Washington State Youth of the Year in 2003.  *See* Dkt. No. 42; Dkt No. 43, Ex. A.

26      [3]  Plaintiff did not make the call to the police, but knew it had been made.  Dkt. No. 41,
    Ex. C at 30-31.

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 2

01 took place on the night in question.

02    It is equally undisputed that seven of the ten South Precinct patrol units responded to the

03 Club, and that Officer Wayne Johnson was the first officer to arrive at the scene.  Upon arrival,

04 Officer Johnson observed that the dance had ended, "people [were] moving away from the

05 community center," and that "everything was okay."  Dkt. No. 43, Ex. F at 12, 14 (Johnson

06 Dep.); *see also id.* at 40-43.   His statements are consistent with those of the plaintiff.  *See, e.g.*,

07 Dkt. No. 43, Ex. A at 3.

08    Officer Jake Briskey also responded to the 911 call.  He noticed a large gathering of

09 people near the intersection of Martin Luther King Way and South Alaska Street, and another

10 group located near the Club entrance.  Dkt. No. 41, Ex. A at 13 (Briskey Dep.).  Similar to

11 Officer Johnson's observations, Officer Briskey noticed that the groups were not in conflict with

12 each other.  *Id.* at 16-17.  After parking his patrol car, Officer Briskey noticed a young man,

13 later identified as the plaintiff, slowly jogging south past his patrol car and toward the group of

14 kids gathered at the abovementioned intersection.  Plaintiff was in motion after a dance attendee

15 told him that Club staff member and plaintiff's older sister, Bonnie Williams, was being accosted

16 by a group of three teenage females down the street.  Dkt. No. 43, Ex. A at 3; Dkt. No. 41, Ex.

17 C. at 39-40.  Plaintiff then saw Bonnie's daughter, Chanel, run toward her mother.

18 Consequently, plaintiff set out to Bonnie's location in order to stop Chanel and keep the peace.

19 *See, e.g.*, Dkt. No. 41, Ex. C at 46-48, 58-59.  It is undisputed that plaintiff jogged directly in

20 front of a patrol car, which he noticed was occupied by an officer later identified as Officer

21 Briskey.  Dkt. No. 41, Ex. C at 51-56.

22    Immediately after plaintiff passed the patrol car, Officer Briskey—fearing plaintiff was

23 running towards the crowd to "engage in a fight"—ordered him to stop, yelling "Freeze!" or a

24 similar command.  *See* Dkt. No. 41, Ex. C at 56, *and id.* Ex. A at 19.[4]  Plaintiff glanced back at

25 

26    [4]  The parties dispute exactly what Officer Briskey yelled as plaintiff passed the patrol
car.  Plaintiff claims Officer Briskey yelled "Freeze."  Dkt. No. 41, Ex. C at 56.  Officer Briskey

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 3

01  the officer but did not stop, believing that Officer Briskey was not yelling at him. *Id.* Ex. C at

02  58-59 (Bradford Dep.) ("I really did not believe he was talking to me, because I had clearly

03  jogged right in front of his vehicle and my staff shirt was on. So I was looking back to see who

04  he was talking to."). Officer Briskey then put his patrol car in reverse, backed it up and

05  stopped, quickly exited the patrol car, and began to run after plaintiff. Seconds later, a second

06  command was shouted by Officer Briskey who, at less than ten feet away, yelled at the plaintiff

07  to "Stop, get on the ground." *Id.* Ex. C. at 60. Plaintiff immediately stopped, pivoted, and

08  turned to face the officer, who was completing his charge toward the plaintiff. *Id.*

09          In this extremely brief period of time, plaintiff held up his staff badge with one hand and

10  tugged on the logo of his shirt with the other, exclaiming "I'm a staff member." *Id.* Ex. C at 63,

11  72. The parties interpreted these actions in very different ways. Plaintiff insists he was

12  attempting to identify himself as a staff member intent on keeping the peace. *Id.* Ex. C at 60-61.

13  Officer Briskey, on the other hand, perceived plaintiff's quick pivot and hand-raising gesture as

14  an aggressive, fighting stance, and viewed plaintiff's keys, which were apparently attached to the

15  badge, as a possible weapon. *Id.* Ex. A at 21-22. Furthermore, Officer Briskey believed

16  plaintiff had consciously disregarded his first command ("Freeze") and half of his second ("get

17  on the ground"). *Id.* Ex. A at 27. With a forearm strike to plaintiff's face, Officer Briskey

18  effectively ran over the plaintiff, knocking him to the ground. *Id.* Ex. C at 63.[5] The parties

19  vigorously dispute whether Officer Briskey had enough time to stop, and it is unclear whether he

20  provided enough time for plaintiff to comply with his commands.

21          Plaintiff stood up, identified himself again and repeatedly urged Officer Briskey to

22  recognize his status as a staff member. Officer Briskey responded by putting plaintiff under

23

24  ───────────────

    insists he said "Stop, get on the ground." *Id.* Ex. A at 19.

25

26      [5] Defendants assert that Officer Briskey grounded plaintiff with a "[t]wo-handed shove,"
    not a forearm to the face. Dkt. No. 41, Ex. A at 26 (Briskey Dep.); *see also* Dkt. No. 43, Ex. F
    at 16 (Johnson Dep.) (similar). Sargent Zerr called it a "tackle." *Id.* Ex. B at 17.

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 4

01 arrest and "escorting" him to the patrol car.  He did so by grabbing and twisting plaintiff's left

02 arm in an arm-bar fashion, spinning and then "slamm[ing]" him on the hood of the patrol car.

03 *Id.* Ex. C at 79, 80.  Plaintiff continued to display his Club badge and explain that he was a staff

04 member, until Officer Briskey ripped the badge off its key chain and threw it to the ground.  *Id.*

05 Ex. C at 91.  Plaintiff and several witnesses further state that Officer Briskey threatened to

06 "fucking break [plaintiff's] arm if [he] moved," and admonished that "if he ever got back up,"

07 Officer Briskey "would knock him the fuck out."  *Id.* Ex. C at 88-89, *and* Ex. E (Foxx, Beaver,

08 Rhone, and Smith decls.); *see also* Dkt. No. 43, Ex. B.  Officer Briskey does not deny making

09 these comments, but insists they were produced by plaintiff's active resistance to the arrest.  *Id.*

10 Ex. A at 36-37.

11      While at (or on) the patrol car, Officer Briskey attempted to keep the crowd of at least

12 twenty Club members and staff away by threatening to pepper-spray them.  *Id.* Ex. C at 73, 82,

13 84.  At some point during the physical contact, plaintiff was handcuffed.  At 11:40 p.m.—one

14 minute after he radioed his arrival to dispatch—Officer Briskey reported "[o]ne in custody,

15 under control."  *Id.* Ex. B at 14.  Three minutes later, Officer Briskey reported that he was en

16 route, with the suspect, to the South Precinct.  *Id.* Ex. B at 14.[6]  Officer Johnson explained to

17 concerned Club staff members, including plaintiff's sister Bonnie, that they would be able to pick

18 up plaintiff at the precinct.  Dkt. No. 43, Exs. E, and F at 23.  Family and friends traveled to the

19 precinct in order to do so, but were denied.

20      Plaintiff was not released from the precinct.  He was first placed in a cell for three hours.

21 Dkt. No. 41, Ex. B at 5.  While at the precinct, Sargent Eric Zerr spoke about the incident with

22 Officer Briskey, Officer Johnson, and plaintiff.  Dkt. No. 43, Ex. B at 16-17, 54-55.  Sargent

23 Zerr photographed plaintiff, asked about any injuries, and noted general concerns about his

24 health.  *Id.* Ex. B at 53-56, 66-67.  Based on his interviews with the officers and plaintiff,

25

26      [6] Officer Briskey "d[id] not recall" whether he used "more force than normal" or if he
"force[d plaintiff] in any manner into the police vehicle."  *See* Dkt. No. 41, Ex. A at 40.

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 5

01  Sargent Zerr decided that plaintiff would be booked and transferred to King County Jail. *Id.* Ex.

02  B at 36, 50-51.

03          Plaintiff spent the night in jail. While there, he was made to strip down, given a red jail

04  outfit, and placed in a small cell with eighteen other arrestees. Dkt. No. 41, Ex. B at 6. At 8:00

05  a.m. the next morning, plaintiff was notified for the very first time that he was being booked for

06  resisting arrest and obstruction of justice. *Id.* An hour later, he was booked and placed on the

07  ninth floor of the Jail, in cell block two. *Id.* He remained there the entire day, and was released

08  from jail that evening at 7:00 p.m., over twenty hours after the incident. *Id.* Plaintiff was

09  screened without seeing a judge, and released to his parents without posting bail. *Id.* Ex. C at

10  114. Plaintiff made his initial court appearance the following Tuesday, where he learned that the

11  charges had been dropped. Plaintiff had no prior arrests, indeed no criminal record, before this

12  incident.

13                                    III.   JURISDICTION

14          Pursuant to 28 U.S.C. § 636(c), the parties have consented to having this matter heard

15  by the undersigned Magistrate Judge. The Court has subject matter jurisdiction over plaintiff's

16  civil rights claims pursuant to 28 U.S.C. § 1331, and it exercises supplemental jurisdiction over

17  plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. §

18  1391(b).

19                          IV.   SUMMARY JUDGMENT STANDARD

20          "Claims lacking merit may be dealt with through summary judgment" under Rule 56 of

21  the Federal Rules of Civil Procedure. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

22  Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to

23  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

24  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

25  matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence

26  with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 6

01 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it

02 "might effect the outcome of the suit under the governing law." *Id.*

03       When applying these standards, the Court must view the evidence and draw reasonable

04 inferences therefrom in the light most favorable to the nonmoving party.  *United States v.*

05 *Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its

06 initial burden by producing affirmative evidence that negates an essential element of the

07 nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed

08 to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

09 *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

10       Once this has occurred, the procedural burden shifts to the party opposing summary

11 judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the

12 merits of the case.  Fed. R. Civ. P. 56(e).  The nonmovant must do more than simply deny the

13 veracity of everything offered or show a mere "metaphysical doubt as to the material facts."

14 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The mere

15 existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute.

16 *Anderson*, 477 U.S. at 252.  To avoid summary judgment, the nonmoving party must, in the

17 words of the Rule, "set forth specific facts showing that there is a genuine issue for trial." Fed.

18 R. Civ. P. 56(e).   The nonmoving party's failure of proof "renders all other facts immaterial,"

19 creating no genuine issue of fact and thereby entitling the moving party to the summary

20 judgment it sought.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

21 V.   ANALYSIS

22       In the present case, the defendants contend that plaintiff's § 1983 and state law claims

23 against Officer Briskey should be dismissed because there was reasonable suspicion to detain

24 plaintiff and probable cause to arrest him pursuant to R.C.W. §§ 9A.76.020 (obstruction of

25 justice) and 9A.76.040 (resisting arrest), the plaintiff cannot satisfy the elements of a Fourth

26 Amendment claim of excessive force and, in the alternative, that Officer Briskey is entitled to

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 7

01   qualified immunity.  Dkt. Nos. 40, 44.  Furthermore, the defendants assert that plaintiff's

02   § 1983 municipality claim against the City of Seattle must be dismissed because plaintiff has

03   failed to set forth a genuine issue of material fact that the alleged constitutional deprivations

04   were ratified by the City of Seattle, or were the result of a "policy or custom" of the Seattle

05   Police Department.  *Accord City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

06         A.    <u>§ 1983 Claims Against Officer Briskey</u>

07        To prevail on a claim for relief brought pursuant to § 1983, a plaintiff must assert that he

08   suffered a violation of rights protected by the Constitution or created by federal statute, and that

09   the violation was proximately caused by a person acting under color of state or federal law.  *See*

10   *WAX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc).  This requires the

11   plaintiff to allege facts showing how a specific individual violated a specific right, causing the

12   harm alleged in the plaintiff's complaint.  *Arnold v. International Bus. Machs. Corp.*, 637 F.2d

13   1350, 1355 (9th Cir. 1981).

14        To avoid summary judgment on plaintiff's § 1983 claims against Officer Briskey, he

15   must establish a genuine issue of material fact as to whether Briskey unlawfully stopped and/or

16   detained him, whether he was unlawfully arrested, and whether unreasonable force was used

17   during plaintiff's arrest.  The Court addresses each of these issues in turn.

18         1.    *Initial Stop*

19        The Fourth Amendment right to be secure from unreasonable searches and seizures

20   "applies to all seizures of the person," including initial and brief seizures falling short of a

21   traditional arrest.  *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007)

22   (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).  Such seizures, however,

23   do not violate the Fourth Amendment "if the officer has a reasonable suspicion supported by

24   articulable facts that criminal activity 'may be afoot.'"  *Berber-Tinoco*, 510 F.3d at 1087

25   (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  To determine whether a seizure was

26   justified by a reasonable suspicion, the Court must "consider whether, in light of the totality of

01  the circumstances, the officer had 'a particularized and objective basis for suspecting the

02  particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S.

03  411, 417-18 (1981)); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). The "totality of the

04  circumstances" may include an officer's "objective observations, information from police

05  reports, if such are available, and consideration of the modes or patterns of operation of certain

06  kinds of law-breakers." *Berber-Tinoco*, 510 F.3d at 1087 (quotation omitted).

07       The defendants argue that Officer Briskey had reasonable suspicion to stop plaintiff

08  based on his experience and the totality of circumstances, including the 911 call by Club staff

09  members "predicting a fight between large teen groups" near the Club, and the plaintiff being "a

10  young man, unknown to the officer," "wearing the 'colors' for his Club," and moving toward

11  one of the "rival" groups. Dkt. No. 44 at 2-3.

12       The Court disagrees. First, Officer Briskey has admitted that, in his judgment, plaintiff

13  did not commit a crime by jogging past the patrol car. Dkt. No. 41, Ex. A at 35. Second, the

14  fact that plaintiff was young, unknown to the officer, or wearing a staff shirt red in color hardly

15  constitute "particularized and objective" bases for suspecting the plaintiff of criminal activity.

16  *Berber-Tinoco*, 510 F.3d at 1087. Indeed, these unparticularized facts form the prototypical

17  "hunches" that the Supreme Court has long cautioned against—here, that males who are young,

18  unknown, and wear "colors" commit crimes. *Accord United States v. Thomas*, 211 F.3d 1186,

19  1191 (9th Cir. 2000) ("Reasonable suspicion must be based on more than an officer's 'inchoate

20  and unparticularized suspicion or hunch.'") (quoting *Terry*, 392 U.S. at 27). Were such factors

21  sufficient grounds on which to predicate reasonable suspicion, it is difficult to imagine an

22  activity incapable of justifying police detention. The "people" the Fourth Amendment speaks of

23  would be "'secure in their persons, houses, papers and effects,' only in the discretion of the

24  police." *Terry*, 392 U.S. at 22 (quoting U.S. CONST. amend IV.)

25       Third, genuine issues of material fact abound regarding whether Officer Briskey's

26  suspicion of criminal activity was reasonable. Officer Briskey's belief that a "large-scale" fight

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 9

01  was close to occurring, and that plaintiff was running towards the crowd to "engage in a fight"

02  is contradicted not only by the testimony of the plaintiff and other witnesses, but also the

03  deposition testimony and dispatch communications of Officer Johnson.  Plaintiff has presented

04  evidence that no fighting had occurred or was occurring and that the reported disturbance had

05  been diffused by Club staff members prior to the arrival of the police.  *See* Dkt. No. 43, Ex. A at

06  3.  Officer Johnson testified that upon his arrival to the scene "everything was okay," which is

07  corroborated by his communication to dispatch that the situation was "[u]nder control."  Dkt.

08  No. 43, Ex. F at 14, 40.  Other disputed facts, such as whether plaintiff was wearing his red

09  staff shirt and whether Officer Briskey was aware of such, cast further doubt on whether Officer

10  Briskey possessed a reasonable suspicion to stop plaintiff.

11         Furthermore, even if the Court were to include the facts surrounding Officer Briskey's

12  first command to "Freeze" in the reasonable suspicion calculus, it would not save the

13  defendants' position.  Not only do the parties dispute what command was given by Officer

14  Briskey and whether or not plaintiff even should have known it was directed to him,[7] but the

15  Ninth Circuit has consistently held that flight, standing alone, does not establish probable cause

16  or even reasonable suspicion.  *See Moreno v. Baca*, 431 F.3d 633, 643 (9th Cir. 2005)

17  ("[Plaintiff's] simple act of walking away from the officers could not have been reasonably

18  mistaken for the type of 'flight' the officers confronted in *Illinois v. Wardlow*, 528 U.S. 119

19  (2000)); *see also United States v. Kohn*, 958 F.2d 379, 1992 WL 55864, *4 (9th Cir. 1992)

20  (unpublished opinion) ("[F]light alone is not sufficient to find probable cause, or even

21  reasonable suspicion."); *United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000)

22  ("Walking away from the police hardly amounts to the headlong flight considered in *Wardlow*

23  and of course would not give rise to reasonable suspicion by itself, even in a high-crime

24  area[.]").

25  ―――――――――

26         [7]  Even Officer Briskey admitted that plaintiff "could have interpreted that [his first
    command] w[as] referring to someone else."  Dkt. No. 41, Ex. A at 29.

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 10

01   Viewing the evidence and all reasonable inferences therefrom in a light most favorable to

02   the plaintiff, the Court finds that genuine issues of material fact exist regarding whether Officer

03   Briskey possessed a reasonable suspicion of criminal activity on the part of the plaintiff.

04   Accordingly, summary judgment is not appropriate on this issue.

05                                  2.    *Lawfulness of Arrest*

06   A warrantless arrest requires a showing of probable cause.  *Dubner v. City and County*

07   *of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001).  The existence of probable cause vitiates

08   any claim of unlawful arrest, *Pierson v. Ray*, 386 U.S. 547 (1967), and acts as a complete

09   defense to the liability of an officer under § 1983.  *Owen v. City of Independence*, 445 U.S. 622,

10   637 (1980).  An arrest made without probable cause, however, provides the basis for an

11   unlawful arrest claim brought pursuant to § 1983 as a violation of the Fourth Amendment.  *Id.*

12   Probable cause exists when, under the totality of circumstances known to the arresting

13   officer, "a prudent person would have concluded that there was a fair probability that [the

14   suspect] had committed a crime."  *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006); *State v.*

15   *Gaddy*, 152 Wash.2d 64, 70, 93 P.3d 872, 875 (2004) (similar); *see also Maryland v. Pringle*,

16   540 U.S. 366, 371 (2003) ("[W]e examine the events leading up to the arrest, and then decide

17   whether these historical facts, viewed from the standpoint of an objectively reasonable police

18   officer, amount to probable cause.") (internal quotation omitted).  "If an officer has probable

19   cause to believe that an individual has committed even a very minor criminal offense in his

20   presence, he may, without violating the Fourth Amendment, arrest the offender."  *Atwater v.*

21   *City of Lago Vista*, 532 U.S. 318, 354 (2001).

22   The defendants contend that the undisputed material facts establish that Officer Briskey

23   had probable cause to lawfully arrest plaintiff for Obstructing a Law Enforcement Officer

24   (R.C.W. § 9A.76.020) and Resisting Arrest (R.C.W. § 9A.76.040).  Dkt. No. 44 at 6. A person

25   is guilty of Obstructing if he or she "willfully hinders, delays, or obstructs any law enforcement

26   officer in the discharge of his or her official powers or duties," *id.* § 9A.76.020(1), and is guilty

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 11

01  of Resisting Arrest if he "intentionally prevents or attempts to prevent a peace officer from

02  lawfully arresting him." *Id.* § 9A.76.040(1).[8]   The defendants contend the facts establish that a

03  reasonable person could "easily conclude" that plaintiff heard, understood, and refused to obey

04  three of Officer Briskey's commands.  Dkt. No. 44 at 6.  Consequently, they insist summary

05  judgment must be entered.

06          The Court disagrees.  The parties dispute almost every event leading up to the arrest.

07  This Court has already concluded that genuine issues of material fact exist regarding whether

08  Officer Briskey's initial stop of the plaintiff was lawful.  *See supra*, §V.A.1.  Moving beyond the

09  facts relevant to that initial determination, the picture becomes more, not less, clouded.  The

10  facts, when viewed in a light most favorable to the plaintiff,[9] present a Club staff member who

11  was recognized as such by Officer Briskey before he yelled "Freeze."  This was the same staff

12  member in charge of the Club's event that night—a Club that had *called* the police for

13  assistance with a potential disturbance.  This police ally was, like the rest of the Club staff,

14  wearing a red shirt with "STAFF" printed across the chest in large, white letters.  This same

15  staff member was jogging to a potential verbal confrontation which had began after an initial

16  scare of a fight had been squelched and the situation put "under control" by none other than the

17  Club staff.  These same facts present a disputed initial command that could reasonably have

18  been directed at someone other than the plaintiff, see *id.* at Dkt. No. 41, Ex. A at 17, 19, 29

19  (Briskey Dep.); *id.* Ex. C at 56-59, and a second command that was delivered as Officer Briskey

20  ran directly toward plaintiff from a mere ten feet away, arguably providing little or no time for

21  plaintiff to fully comply with the command, as he stopped and notified the officer that he was a

22  _____

23      [8]  Obstruction is a gross misdemeanor punishable by jail.  R.C.W. § 9A.76.020(2).  Resisting

24  is a misdemeanor punishable by jail.  *Id.* § 9A.76.040(2).  Washington law authorizes law
    enforcement officers to execute warrantless arrests if the officer has probable cause to believe the

25  person is committing, or has committed, a misdemeanor or gross misdemeanor in his presence.
    *Id.* § 10.31.100(3).

26      [9]  *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) ("For summary judgment
    purposes, we must accept [the plaintiff's] version of the [arrest] incident as true. . . .").

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 12

01  staff member attempting to keep the peace.

02      Because the historical facts of the incident are so vigorously disputed, the Court is

03  unable to conclude, as a matter of law, that an objectively reasonable person or police officer

04  could have concluded that there was a fair probability that plaintiff had "willfully hinder[ed],

05  delay[ed], or obstruct[ed]" Officer Briskey in the discharge of his duties on the evening in

06  question, R.C.W. § 9A.76.020(1), or had otherwise "intentionally prevent[ed] or attempt[ed] to

07  prevent" Officer Briskey from lawfully arresting him.  *Id.* § 9A.76.040(1); *Hart v. Parks*, 450

08  F.3d at 1066.  Accordingly, summary judgment is inappropriate on the issue of probable cause.

09              3.    *Excessive Force*

10      An arrest is a seizure governed by the reasonableness standard of Fourth Amendment.

11  *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).  "A Fourth Amendment claim

12  of excessive force is analyzed under the framework outlined by the Supreme Court in *Graham*

13  *v. Connor*."  *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc).  In

14  determining whether the degree of force is reasonable under the Fourth Amendment, the Court

15  must carefully balance the nature and quality of the intrusion against the governmental interest

16  at stake.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The question of whether the force

17  used was objectively reasonable "must be judged from the perspective of a reasonable officer on

18  the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396 (citation omitted).

19  Keeping this admonition in mind, the Court must "first assess the quantum of force used to

20  arrest [the plaintiff]'" and then "measure the governmental interests at stake by evaluating a

21  range of factors" outlined in *Graham*.  *Deorle v. Rutherford*, 272 F.3d 1272, 1279-80 (9th Cir.

22  2001).  These factors include, but are not limited to, "[1] the severity of the crime at issue, [2]

23  whether the suspect poses an immediate threat to the safety of the officers or others, and [3]

24  whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490

25  U.S. at 396.  Other factors, such as "the availability of alternative methods of capturing or

26  subduing a suspect," may also be considered.  *Smith*, 394 F.3d at 701.

01      When applying the *Graham* factors, the Court must be mindful that if the evidence,

02   reviewed in the light most favorable to the plaintiff, could support a finding of excessive force,

03   then the defendants are not entitled to summary judgment.  "Because [the excessive force

04   inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw

05   inferences therefrom, [the Ninth Circuit] has held on many occasions that summary judgment .

06   . . in excessive force cases should be granted sparingly."  *Santos v. Gates*, 287 F.3d 846, 853

07   (9th Cir. 2002) (citing *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as

08   amended) (collecting cases).   This is because such cases almost always turn on credibility

09   determinations that are the province of the jury, not the court.  *See Liston*, 120 F.3d at 976 n.10

10   ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact

11   for the jury.").

12      This case is rife with jury questions.  As to the quantum of force used by Officer

13   Briskey, the parties tell completely different stories.  Plaintiff claims Officer Briskey intentionally

14   hit him in the face, knocked him to the ground, grabbed and twisted him left arm in an arm-bar

15   fashion, spun and then slammed him—face first—onto the hood of the patrol car. Dkt. No. 41,

16   Ex. C at 63, 74-80.  Officer Briskey "do[es]n't recall" whether he used more force than usual,

17   and insists that he only "shove[d]" plaintiff and simply "escorted [him] towards the patrol car."

18   *Id.* Ex. A at 40, 26, 43.  Sargent Zerr called it a "tackle."  *Id.* Ex. B at 17.  Officer Johnson

19   avoided the question altogether during his deposition, preferring to leave it vaguely at: "[w]e

20   escorted him to the car."  Dkt. No. 43, Ex. F at 45.  Because the Court, "[f]or summary

21   judgment purposes, . . . must accept [the plaintiff's] version of the incident as true," *Barlow v.

22   Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991), it finds that plaintiff was intentionally and

23   abruptly knocked to the ground by a forearm strike to the face, the force of which flung him

24   into a grouping of small boulders alongside the sidewalk near the Club.

25      To this assessment of force, the Court must apply the *Graham* criteria, starting with the

26   "the most important single element of the three specified factors:  whether the suspect poses an

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 14

01    immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441

02    (9th Cir. 1994).   Here, the record does not reveal an articulable basis for believing that plaintiff

03    was armed, other than the fact that he may have held his keys in one hand.  The evidence of

04    record, for purposes of summary judgment, establishes that plaintiff was a Club staff member

05    wearing a solid red shirt with "STAFF" printed across the chest in large, white letters, at times

06    directly facing Officer Briskey.  There is also evidence in the record that plaintiff was attempting

07    to comply with Officer Briskey's orders from the time he shouted his second command—from

08    less than ten feet away—to the time he hit plaintiff square in the face.  It is unclear whether

09    plaintiff could have placed himself on the ground any quicker than Officer Briskey did.

10    Moreover, there are widely varying accounts of the actions taken by plaintiff and Officer

11    Briskey in the seconds leading up to the knockdown.  In light of these facts and genuine

12    disputes, a rational jury could find that plaintiff posed no immediate safety threat to anyone.

13        The second *Graham* factor is the severity of the crime.  *Graham*, 490 U.S. at 396.  The

14    defendants contend that Officer Briskey had probable cause to arrest plaintiff for Obstruction,

15    the nature of which would provide some basis for Officer Briskey's use of force.  However,

16    because the Court has determined that genuine issues of material fact prevent a finding of

17    probable cause as a matter of law, see *supra* § V.A.2., this factor cannot save the defendants'

18    excessive force argument.

19        The third and final *Graham* factor asks whether the individual actively resisted arrest or

20    attempted to evade by flight.  As outlined above, the parties dispute almost every action (and

21    inaction) taken by plaintiff.  In light of these disputed facts, which are viewed in a light most

22    favorable to the plaintiff, a rational jury could very well find that plaintiff was not resisting or

23    attempting to flee from the scene and therefore did not need to be forcefully subdued.

24        In sum, the Court finds that the question of whether the force used in this case was

25    reasonable raises numerous issues of material fact that must be resolved by a jury. Accordingly,

26    summary judgment on the issue of excessive force is improper.

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 15

B.      § 1983 Claims Against the City of Seattle

      1.      *Policy or Custom*

Local government units, such as the City of Seattle, can be sued as a "persons" under § 1983; however, they cannot be held responsible for the acts of their employees under a theory of *respondeat superior. See, e.g., Collins v. City of Hacker Heights*, 503 U.S. 115, 122 (1992); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Rather, a § 1983 plaintiff must demonstrate that the alleged constitutional deprivation was the result of a "policy or custom" of the local government unit.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690-91.

      a.      Improper Investigation or Response

Plaintiff contends that the City of Seattle maintains an unconstitutional policy and custom or pattern and practice of "not properly investigating and responding to citizens' complaints of civil rights violations," which he insists is evidenced by a Draft Report of the Office of Professional Accountability Review Board addressing a 2007 arrest of a different individual, wherein it is alleged that the City of Seattle Police Chief "appears to ignore evidence" and/or has "publically sanctioned" police misconduct and/or "perfunctory compliance with arrest screening procedures."  Dkt. No. 43, Ex. K.

This evidence, as well as plaintiff's commentary addressing it, is insufficient to withstand summary adjudication on plaintiff's § 1983 municipality claim based on a policy or custom. First, this evidence is inadmissible, as it is comprised of the conclusory hearsay statements of persons with no personal knowledge of the underlying circumstances in this case, and for which plaintiff has not provided a single witness who can establish a foundation for admissibility.  Fed. R. Evid. 801(c).  Second, plaintiff has ushered no evidence that the City's putative policy or custom "was the 'moving force' behind the constitutional violation he suffered."  *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694-95).  Third, even assuming *arguendo* that Sargent Zerr qualifies as a "policymaker," the

01   fact that he did not overrule Officer Briskey's arrest of plaintiff, even if the arrest was

02   unconstitutional, does not constitute a sufficient basis to hold the City liable in this case. *See,*

03   *e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1239-40 (9th Cir. 1999) ("To hold cities liable under

04   section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of

05   subordinates would simply smuggle *respondeat superior* liability into section 1983.") (quotation

06   omitted).   Fourth, absent additional proof, the mere existence of one or two incidents of

07   unconstitutional conduct is insufficient to make out a "pattern and practice" or "policy and

08   custom" claim under § 1983. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

09   Accordingly, summary judgment is appropriate on plaintiff's "policy or custom" claim against

10   the City of Seattle.

11                                    b.     "Booking" Theory

12          Pointing to certain isolated deposition statements of Sargent Zerr, plaintiff also alleges

13   that the City of Seattle has an unconstitutional "policy and practice of booking persons in order

14   to identify them, under the guise of monitoring their health after a use of force against them."

15   Dkt. No. 42 at 22-24.  The implication is that the City gives law-abiding persons like plaintiff

16   criminal arrest records for the sole purposes of identification, in violation of such persons'

17   Fourth Amendment rights.  No authority is cited for this theory.

18          The Court rejects plaintiff's argument.  Sargent Zerr testified that booking "generally"

19   occurs in cases where force is used by an officer in effecting an arrest.  Dkt. No. 41, Ex. A at

20   67.  He further stated that booking for identification purposes is *not* standard practice.  *Id.* Ex.

21   A at 71.  Sargent Zerr specified that in *this* case, he had a slight concern about the plaintiff's

22   identity, but was predominantly—in fact, "99 percent"—concerned about the health of the

23   plaintiff given the pain statements he made at the precinct.  *Id.* Ex. A at 70-71.  This testimony

24   simply does not present a genuine issue of material fact on plaintiff's "booking" theory.

25   Furthermore, were the opposite true, plaintiff has nevertheless failed to usher any non-

26   conclusory, admissible evidence that this purported policy or practice "was the 'moving force'

01 behind the constitutional violation plaintiff claims he suffered." *Galen*, 477 F.3d at 667

02 (quoting *Monell*, 436 U.S. at 694-95).

03              2.       *Ratification*

04       A municipality also can be liable under § 1983 for an isolated constitutional violation if a

05 final policymaker "ratified" a subordinate's actions. *St. Louis v. Praprotnik*, 485 U.S. 112, 127-

06 28 (1988). "Ordinarily, ratification is a question for the jury." *Christie v. Iopa*, 176 F.3d 1231,

07 1238-39 (9th Cir. 1999). However, as with any jury question, a plaintiff must establish a

08 genuine issue of material fact regarding whether a ratification actually occurred. *Id.* (citations

09 omitted). To do so, "[t]he plaintiff must show that the triggering decision was the product of a

10 'conscious, affirmative choice' to ratify the conduct in question.'" *Haugen v. Brosseau*, 351

11 F.3d 372, 393 (9th Cir. 2003) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th

12 Cir.1992)). Here, plaintiff has failed to set forth a single admissible fact that a policymaker was

13 aware of or affirmatively adopted the event in question. Furthermore, even if the Court were to

14 treat Sargent Zerr as a policymaker in this regard, mere acquiescence in a single instance of

15 alleged unconstitutional conduct is not sufficient to demonstrate ratification of a subordinate's

16 acts, as explained above. *See Gillette*, 979 F.2d at 1348. Accordingly, summary judgment is

17 also proper on plaintiff's ratification claim.

18       C.      Qualified Immunity from § 1983 Claims

19       Having concluded that plaintiff's § 1983 claims under the Fourth Amendment will not be

20 dismissed on summary judgment, the Court now turns to the issue of qualified immunity for

21 these claims. Defendant Briskey argues that even if he violated the plaintiff's constitutional

22 rights under the Fourth Amendment, he is shielded by qualified immunity because he reasonably

23 believed that his actions were lawful (i.e., arguably supported by probable cause) in light of

24 clearly established law and the information he possessed at the time of the arrest. Dkt. No. 40

25 at 18.

26       When a qualified immunity defense is raised, federal courts must balance the right of

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 18

01    public officials to be free from non-meritorious lawsuits against the right of complainants to be

02    fairly heard.   A public official who performs a discretionary function enjoys qualified immunity

03    in a civil action for damages, provided that his or her conduct does not violate clearly

04    established federal statutory or constitutional rights of which a reasonable person would have

05    known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is immunity from

06    *suit*, not just from liability, and therefore protects individual defendants from all aspects of civil

07    litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

08           The Supreme Court has established a two-part test for determining whether an official is

09    entitled to qualified immunity.  First, the Court must determine whether the facts, when taken in

10    the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a

11    constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, if such a right was

12    violated, the Court must ascertain whether that right was "clearly established" at the time of the

13    alleged violation.  *Id.*  This analysis assists the Court in determining whether a reasonable officer

14    could have believed his particular conduct was lawful under the circumstances.  *Edgerly v. City*

15    *& County of San Francisco*, 495 F.3d 645, 654 (9th Cir. 2007).

16           In the present case, the Court has declined to dismiss plaintiff's § 1983 claims against

17    defendant Briskey.  The parties do not dispute that at the time of plaintiff's detention and

18    arrest, he had a clearly established Fourth Amendment right to be free from unlawful seizure

19    and the use of unreasonable force.  However, as discussed above, there remain several

20    unresolved factual issues at the heart of plaintiff's § 1983 claims.  *See supra*, § V.A.

21           Courts have long struggled with the qualified immunity analysis on summary judgment

22    when there are genuine issues of material fact relevant to that analysis.  *See, e.g.*, *Sloman v.*

23    *Tadlock*, 21 F.3d 1462, 1467-69 (9th Cir. 1994).  While the question of clearly established law

24    is for the Court, it is the jury that is "best suited to determine the reasonableness of an officer's

25    conduct in light of the factual context in which it takes place."  *Id.* at 1468.  The Court

26    recognizes that the mere existence of a factual dispute is, standing alone, not always a sufficient

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 19

01    basis to deny summary judgment on a qualified immunity claim.  *Saucier*, 533 U.S. at 200.

02    However, once the Court has concluded that plaintiff's facts would establish a constitutional

03    violation if proven true, and that the right violated is clearly established, the objective

04    reasonableness of the officer's conduct must be determined in light of the facts of the case.

05    Those facts are yet to be determined by a jury, and the final step of the qualified immunity

06    analysis must await that determination.  Accordingly, as to plaintiff's § 1983 claims against

07    defendant Briskey, the motion for summary judgment on qualified immunity is denied.      D.

08            <u>State Law Claims</u>

09                    1.    *Assault and Battery*

10            Battery is a "harmful or offensive contact with a person, resulting from an act intended

11    to cause the plaintiff or a third person to suffer such a contact," or apprehension that such

12    contact is imminent.  *McKinney v. City of Tukwila*, 103 Wash.App. 391, 408, 13 P.3d 631, 641

13    (2000) (internal quotation omitted).  Assault is any act that causes apprehension of a battery.

14    *Id.*  The defendants have moved for summary judgment on this claim, arguing that it  must fail

15    because Officer Briskey was privileged, by probable cause, to use force during plaintiff's arrest,

16    and the force used was reasonable.  Dkt. No. 40 at 12-13.  Furthermore, the defendants insist

17    that plaintiff's assault and battery claim must fail for want of a "significant physical injury," *id.*,

18    citing a Fifth Circuit excessive force case that was overturned fifteen years ago on that precise

19    point.  *See Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989), *overturned by Hudson v.*

20    *McMillian*, 503 U.S. 1, 8 (1992).

21            In this case, reasonable suspicion and probable cause are questions for the jury.

22    Because the Court has not dismissed plaintiff's Fourth Amendment claims of unlawful arrest

23    and excessive force, there has been no determination of whether the arrest of plaintiff was

24    lawful or whether the forced used was reasonable.  Accordingly, the Court finds that summary

25    judgment on plaintiff's assault and battery claim is not appropriate.  Nor is qualified immunity

26    proper under state law.  *See Staats v. Brown*, 139 Wash.2d 757, 780, 991 P.2d 615, 627-28

01  (2000) (holding that state qualified immunity is not available "for claims of assault and battery

02  arising out of the use of excessive force to effectuate an arrest").

03              2.     *False Arrest and False Imprisonment*

04              A false arrest occurs when a person with actual or pretended legal authority to arrest

05  unlawfully restrains or imprisons another person. *Bender v. City of Seattle*, 99 Wash.2d 582,

06  591, 664 P.2d 492, 499 (1983). False imprisonment is the unjustified intentional confinement

07  of another person. *Id.*  The defendants have moved for summary judgment on these claims

08  based solely on the existence of probable cause. Dkt. No. 40 at 7-10.

09              Under Washington law, the existence of probable cause is a complete defense to an

10  action for false arrest or false imprisonment. *McBride v. Walla Walla County*, 95 Wash.App.

11  33, 38, 975 P.2d 1029, 1032 (1999). The question of whether a police officer had probable

12  cause is generally one of fact. *McDaniel v. City of Seattle*, 65 Wash.App. 360, 368, 828 P.2d

13  81, 86 (1992), *review denied*, 120 Wash.2d 1020, 844 P.2d 1017 (1993). "The rule is that

14  unless the evidence *conclusively and without contradiction* establishes the lawfulness of the

15  arrest, it is a question of fact for the jury to determine whether an arresting officer acted with

16  probable cause." *Daniel v. State ex rel. Washington State Patrol*, 36 Wash.App. 59, 62, 671

17  P.2d 802, 804 (1983) (emphasis added). Only when this is not the case may a court make the

18  finding as a matter of law.

19              The Court has already determined that summary judgment is inappropriate regarding

20  whether Officer Briskey possessed reasonable suspicion to stop or probable cause to arrest

21  plaintiff on the evening of August 4, 2006. Because want of probable cause was the sole basis

22  on which the defendants have moved for summary judgment on plaintiff's false arrest and false

23  imprisonment claims, their motion must be denied.

24              3.     *Malicious Prosecution*

25              Probable cause is also a complete defense to an action for malicious prosecution under

26  Washington law. *Hanson v. City of Snohomish*, 121 Wash.2d 552, 558, 852 P.2d 295, 298

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 21

01    (1993).  At common law, a malicious prosecution claim arising from a criminal action requires

02    the plaintiff to establish that (1) the allegedly malicious prosecution was instituted or continued

03    by the defendant(s); (2) there was want of probable cause to institute or continue the

04    prosecution; (3) the proceedings were instituted or continued through malice; (4) the

05    proceedings were terminated or abandoned in favor of the plaintiff; and (5) that the plaintiff

06    suffered injury or damage as a result of the prosecution.  *Id.* (quotations omitted).  Although

07    each element must be pleaded and proved, "malice and want of probable cause constitute the

08    gist of a malicious prosecution action."  *Clark v. Baines*, 150 Wash.2d 905, 911, 84 P.3d 245,

09    248 (2004).  The defendants have moved for summary judgment based on the lack of proof on

10    those two elements.  Dkt. No. 40 at 10-12.

11          Because the Court has already determined that probable cause is a question for the jury

12    in this case, see *supra* §§ V.A.2, B.2., plaintiff's malicious prosecution claim cannot not be

13    disposed of on the basis of probable cause.  *See also Peasley v. Puget Sound Tug & Barge Co.*,

14    13 Wash.2d 485, 498, 125 P.2d 681, 688 (1942) ("A *prima facie* case of want of probable

15    cause is established by proof that the criminal proceedings were dismissed or terminated in

16    favor of the party bringing the malicious prosecution action."); *Bender*, 99 Wash.2d at

17    594-595, 664 P.2d at 501 ("*Peasley* makes it unmistakably clear that if a factual issue as to

18    whether probable cause *or* malice exists, the question must be submitted to the jury.")

19    (emphasis added).  As to the question of malice, the Court finds that summary adjudication is

20    also inappropriate at this time.  *See id.* ("[W]here the evidence is sufficient to establish want of

21    probable cause, malice may be inferred from that fact when proven[.]").  Here, a rational jury

22    could conclude that "the prosecution complained of was undertaken from improper or

23    wrongful motives or in reckless disregard of the rights of the plaintiff."  *Orwick v. City of*

24    *Seattle*, 103 Wash.2d 249, 257, 692 P.2d 793, 798 (1984) (citations omitted).

25                    4.    *Outrage*

26          Outrage and intentional infliction of emotional distress are the same tort.  *Kloepfel v.*

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 22

01    *Bokor*, 149 Wn.2d 192, 194 n.1, 66 P.3d 630, 631 n.1 (2003).  They require the plaintiff to

02    prove extreme and outrageous conduct, intentional or reckless infliction of emotional distress,

03    and actual severe emotional distress.  *Id.* at 195, 66 P.3d at 632.  The conduct in question must

04    be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

05    of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

06    *Grimsby v. Samson*, 85 Wash.2d 52, 53, 530 P.2d 291, 295 (1975).  "[T]he determination of

07    whether conduct is sufficiently outrageous to warrant recovery is generally a question of fact

08    for the jury."  *Snyder v. Medical Serv. Corp. of Eastern Washington*, 145 Wash.2d 233, 242,

09    35 P.3d 1158, 1163 (2001).

10          The defendants argue that plaintiff cannot maintain a claim for mental or emotional

11    distress under the tort of outrage when the same damages are recoverable under another

12    theory, such as assault.  Dkt. No. 40 at 14.  They also insist that summary judgment is proper

13    for want of extreme and outrageous conduct.  *Id.* at 14-15.[10]

14          The Court agrees with defendants that, under Washington law, recovery for the tort of

15    outrage is allowed only in the absence of other tort remedies.  *Rice v. Janovich*, 109 Wash.2d

16    48, 61, 742 P.2d 1230, 1238 (1987) (precluding recovery on outrage when damages for mental

17    or emotional distress were already recoverable under plaintiff's assault claim).  Here, the Court

18    has already determined that plaintiff's assault and battery claim will proceed to trial.  Because

19    plaintiff's claim for emotional distress damages is encompassed by that claim, damages for the

20    tort of outrage would amount to double recovery.  *See id.*; *Doe v. Finch*, 133 Wash.2d 96,

21    102, 942 P.2d 359, 361 (1997).  Accordingly, plaintiff's outrage claim should be dismissed.[11]

22

23

24       [10]  Plaintiff concedes that summary judgment should be entered on his claim of negligent
infliction of emotional distress.  *See* Dkt. No. 42 at 7.

25

26       [11]  The defendants' motion for summary judgment on state qualified immunity is denied
for reasons similar to those stated by the Court regarding qualified immunity from plaintiff's   §
1983 claims.  *See supra*, § V.C.

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 23

01        E.      All Claims Against Seattle Police Department

02        Plaintiff includes the Seattle Police Department as a named defendant in his First

03  Amended Complaint.  Dkt. No. 6 at 2.  In order to bring an appropriate action challenging the

04  actions, policies or customs of a local governmental unit, a plaintiff must name the county or

05  city itself as a party to the action, and not the particular municipal department or facility where

06  the alleged violation occurred.  *See Nolan v. Snohomish County*, 59 Wash.App. 876, 883, 802

07  P.2d 792, 796 (1990).  Here, the Seattle Police Department is not a legal entity capable of

08  being sued.  It is therefore dismissed as a defendant in this case.

09        F.      All Claims Against John Doe Defendants

10        Discovery in this case is complete and plaintiff has failed to name or personally serve

11  any of the "John Doe" police officers named in his First Amended Complaint.  Although

12  plaintiff has provided the name of Sargent Zerr in the context of his claims against the City of

13  Seattle, no amended complaint was filed to add him as a named party.  Nor was service ever

14  effected upon him.  Because plaintiff has had the opportunity to identify the John Doe

15  defendants but has failed to perfect claims against them, these defendants must be dismissed.

16  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

17                               VI.   CONCLUSION

18        For the foregoing reasons, the defendants' motion for summary judgment is

19  GRANTED IN PART and DENIED IN PART, as follows:

20        (1)     Summary judgment on plaintiff's § 1983 claims against Officer Briskey is

21  DENIED.

22        (2)     Summary judgment on plaintiff's § 1983 claims against the City of Seattle is

23  GRANTED, and those claims are DISMISSED with prejudice.

24        (3)     Summary judgment is DENIED on the issue of qualified immunity from

25  plaintiff's § 1983 claims against Officer Briskey.

26        (4)     Summary judgment on plaintiff's state law claims of assault and battery, false

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 24

01  arrest, false imprisonment, and malicious prosecution is DENIED.

02        (5)     Summary judgment is DENIED on the issue of qualified immunity from the

03  abovementioned state law claims.

04        (6)     Summary judgment on plaintiff's claims of outrage and negligent infliction of

05  emotional distress is GRANTED, and those claims are DISMISSED with prejudice.

06        (7)     For the reasons stated above, the Seattle Police Department and Seattle Police

07  Officers John Doe 1 to 4 are DISMISSED as defendants in this case.

08        (8)     The Clerk of Court is directed to send a copy of this Order to the parties.

09        DATED this 4th day of April, 2008.

10

11  _____

12  JAMES P. DONOHUE
    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PAGE – 25