01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROMELLE BRADFORD,                              )   Case No. C07-365-JPD
                                               )
            Plaintiff,                         )
                                               )
      v.                                       )
                                               )   ORDER ON POST-TRIAL MOTIONS
THE CITY OF SEATTLE, et al.,                   )
                                               )
            Defendants.                        )
_____)

    This case was tried to a jury on May 12-16, 2008.  On May 19, 2008, the jury returned

a verdict for the plaintiff, Romelle Bradford, on his claims for unlawful arrest and excessive

force under 42 U.S.C. § 1983 and his state claim for false arrest, and for the defendants Officer

Briskey and the City of Seattle on plaintiff's claims for illegal seizure and abuse of process

under § 1983 and plaintiff's state law claims for assault and battery and malicious prosecution.

Dkt. No. 96.  Defendants now challenge the legal and factual bases for the verdict.  The

present matter comes before the Court on the defendants' motion for judgment as a matter of

law, motion to amend the judgment, and motion for a new trial, and on the plaintiff's motion

for court awarded attorney's fees.  *See* Dkt. Nos. 46-53, 55-63, 71-72.  After careful

consideration of the motions, responses, the governing law and the balance of the record, the

Court ORDERS as follows:

ORDER ON POST-TRIAL MOTIONS
PAGE – 1

01       A.      <u>Motion for Judgment as a Matter of Law</u>

02          1.    *Defendants Failed to Comply with Rule 50(a)*

03      Defendants move for judgment notwithstanding the verdict on multiple issues pursuant

04 to Federal Rule of Civil Procedure 50(b).[1]  The scope and propriety of a Rule 50(b) motion is

05 controlled by Rule 50(a).  Rule 50(a) permits a party to move for judgment as a matter of law

06 after the opposing party has been fully heard and prior to the submission of the case to the jury.

07 Fed. R. Civ. P. 50(a)(1).  If a Rule 50(a) motion is denied, Rule 50(b) allows the moving party

08 to "renew" its motion within ten days after the court's entry of final judgment in the case.  Fed.

09 R. Civ. P. 50(b).  A party may alternatively request a new trial under Rule 59.  *See id.*

10      Rule 50(a) provides that a motion for judgment as a matter of law made before the case

11 is submitted to the jury "must specify . . . the law and the facts that entitle the movant to the

12 judgment."  Fed. R. Civ. P. 50(a)(2).  It is hornbook law that "[a] party cannot raise arguments

13 in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in

14 its pre-verdict Rule 50(a) motion."  *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th

15 Cir. 2003); *see also Wallace v. City of San Diego*, 479 F.3d 616, 620 (9th Cir. 2007) ("A

16 renewed motion for judgment as a matter of law must be preceded by a motion made at trial

17 that sets forth the specific grounds raised in the renewed motion"); *Murphy v. City of Long*

18 *Beach*, 914 F.2d 183, 186 (9th Cir. 1990) ("[Judgment notwithstanding the verdict] is

19 improper if based upon grounds not alleged in a directed verdict [motion].");  Advisory Comm.

20 Notes to the 1991 Amendments, Fed. R. Civ. P. 50 ("A post trial motion for judgment can be

21 granted only on grounds advanced in the pre-verdict motion.").

22      The Ninth Circuit has explained that

23      [t]he purpose of this rule is twofold.  First it preserves the sufficiency of the

24

---

25      [1]  A motion for judgment notwithstanding the verdict is technically a motion for
26 judgment as a matter of law filed after the jury's verdict pursuant to Federal Rule of Civil Procedure 50(b). *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1027 n.2 (9th Cir. 2003); Fed. R. Civ. P. 50(b).

ORDER ON POST-TRIAL MOTIONS
PAGE – 2

01
02
03

> evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to "engage in an impermissible reexamination of facts found by the jury." Second, it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them.

04
*Freund*, 347 F.3d at 761 (quoting *Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1428-29 (9th Cir. 1986)).

05
06
As noted above, a party may move for judgment as a matter of law at any time before

07
the court submits the case to the jury. Fed. R. Civ. P. 50(a)(2). Defendants made such a

08
motion at the close of the evidence relating to plaintiff's abuse of process claim, filing a

09
detailed motion and presenting oral argument regarding that motion at the close of the

10
plaintiff's case-in-chief. *See* Dkt. No. 84 (Defendants' Motion to Dismiss Abuse of Process

11
Claim); Dkt. No. 91 (colloquy regarding defendants' motion). The Court granted defendants'

12
motion and dismissed plaintiff's state court abuse-of-process claim pursuant to Rule

13
50(a)(1)(A). *See* Dkt. No. 91. Defendants' motion did not, however, assert qualified

14
immunity, probable cause, or other sufficiency of the evidence argument as grounds for

15
judgment as a matter of law.[2] Because the post-trial motion under Rule 50(b) is merely a

16
renewal of the rule 50(a) motion made at the close of the evidence, defendants may not raise

17
those argument now.

18
That defendants moved for summary judgment on some or all of these issues does not

19
change this result. *Cf. Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 887 (9th Cir. 2002)

20
(holding that judgment as a matter of law under Rule 50(b) was precluded because defendant

21
failed to make a Rule 50(a) motion before submission of case to jury and after close of all

22
evidence); *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir.

23
1997) (holding that a litigant's summary judgment motion does not satisfy the requirement for

24
25
26

---

[2] Not only did defendants fail to raise these arguments in their Rule 50(a) motion, they also failed to raise them during an extended colloquy with the Court regarding other bases for judgment as a matter of law—e.g., the issue of assault versus "assault and battery" or battery as a claim to reach the jury, or the false imprisonment claim, which was raised by the Court *sua sponte*. *See* Dkt. No. 91.

ORDER ON POST-TRIAL MOTIONS
PAGE – 3

01  a motion for judgment as a matter of law at the close of the evidence).  And although the Ninth

02  Circuit has yet to rule on the specific issue of qualified immunity in this posture, it appears that

03  the weight of authority from other circuits has adhered to the language of Rule 50 in qualified

04  immunity situations.  *See, e.g.*, *Isom v. Town of Warren*, 360 F.3d 7, 9 (1st Cir. 2004) (treating

05  qualified immunity argument as waived by not raising it at the close of evidence via Rule 50(a),

06  despite the fact that it was raised in a motion for summary judgment); *Provost v. City of*

07  *Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001) ("Because [defendant officer] did not specifically

08  include a qualified immunity argument in his pre-verdict request for judgment as a matter of

09  law, he could not have included such an argument in his post-verdict motion even had he

10  attempted to do so."); *cf. Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir.2002)

11  ("Defendants who are not successful with their qualified immunity defense before trial can

12  re-assert it at the end of the plaintiff's case *in a Rule 50(a) motion*.") (emphasis added).  While

13  a qualified immunity defense is certainly "not waived or lost if a case proceeds to trial,"

14  *Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003), neither is the applicability of the

15  Federal Rules of Civil Procedure.

16        Defendants essentially argue that summary judgment motions based on qualified

17  immunity are somehow different from all others, obviating the need to comply with Rule 50(a)

18  in all cases where qualified immunity might be available.  Defendants also insist that they "were

19  compelled" to await the decision of the jury on the factual issues involved before requesting

20  judgment as a matter of law, and that to do otherwise would have been unethical or frivolous.

21  *See* Dkt. No. 131 at 3.

22        The Court disagrees.  Under the defendants' rationale, every order declining to grant

23  summary judgment would simultaneously eliminate the procedural requirements of Rule 50(a).

24  Motions for summary judgment are routinely filed in civil rights cases involving qualified

25  immunity.  The defendants' argument means that in any such case a defendant could hide

26  behind a motion and fail to alert the plaintiff to the alleged insufficiency of the evidence until

01  too late to correct even the simplest deficiency.  *See Freund*, 347 F.3d at 761 (outlining the

02  purposes of Rule 50(a), including the need to "call[] to the court's and the parties' attention

03  any alleged deficiencies in the evidence at a time when the opposing party still has an

04  opportunity to correct them").  The procedures of Rule 50 are obligatory and compliance is

05  strictly observed.  *Janes*, 279 F.3d at 887 ("[S]ubstantial compliance is not enough."); *Zhang*

06  *v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003); *Lifshitz*, 806 F.2d at 1428.

07  Because defendants failed to follow these requirements, the right to judgment under Rule 50(b)

08  has been forfeited and the merits of defendants' present motion need not be resolved.[3]

09  2.   *Defendants' Rule 50(b) Motion Fails on the Merits*

10  Assuming that the opposite were true, the Court would deny defendants' Rule 50(b)

11  motion on the merits.

12  When assessing a Rule 50(b) motion, the court must view the evidence in the light most

13  favorable to the nonmovant and draw all inferences in his favor.  *See, e.g.*, *Josephs v. Pacific*

14  *Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).  The court may not weigh the evidence or assess

15  the credibility of witnesses, and must disregard all evidence favorable to the moving party that

16  the jury was not required to believe.  *See Bell v. Clackamas County*, 341 F.3d 858, 865 (9th

17  Cir. 2003).  The motion may be granted only if the evidence points but one way and is

18  susceptible to no reasonable inferences supporting the nonmovant.  *Josephs*, 443 F.3d at 1062.

19  The test applied is whether the evidence, construed in a light most favorable to the nonmovant,

20  "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."

21  *Id.* (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)); *Settlegoode v. Portland Pub.*

22  *Schools*, 371 F.3d 503, 510 (9th Cir. 2004).  Where there is sufficient conflicting evidence, or

23  ─────────────

24  [3]  For this reason, a motion for a new trial under Rule 59 is the proper vehicle for the
Court to review the jury's verdict in this case.  *See Freund*, 347 F.3d at 765 ("Unlike a motion for

25  judgment as a matter of law, a motion for a new trial does not have to be preceded by a Rule 50(a)
motion prior to submission of the case to the jury."). In addition to their motion for judgment not

26  withstanding the verdict, defendants moved for a new trial under Rule 59 as an alternative form
of relief, which is discussed below.

ORDER ON POST-TRIAL MOTIONS
PAGE – 5

01 | if reasonable minds could differ over the verdict, judgment as a matter of law after the verdict

02 | is improper.  *See, e.g.*, *Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 775 (9th Cir. 1990).

03 |      The defendants' Rule 50(b) motion—based on the issues of qualified immunity,

04 | probable cause, and excessive force—attempts to re-characterize and re-package the facts in a

05 | light more favorable to them.  For example, according to the defendants, the evidence

06 | presented at trial conclusively establishes that plaintiff continued to run "long after the officer's

07 | command" to stop and get on the ground, which they claim plaintiff heard and understood as

08 | directed to him.  Dkt. No. 98 at 6-7.[4]  Defendants then use the jury's finding of reasonable

09 | suspicion as a basis to contend that Defendant Officer Briskey also possessed probable cause

10 | to arrest.  Dkt. No. 98 at 3-8.  Because probable cause is a complete defense to liability for

11 | unlawful arrest under § 1983 and false arrest under Washington law, see Dkt. No. 45 at 11, 21,

12 | defendants asks the Court to amend the judgment by dismissing these claims.  Dkt. No. 98 at

13 | 8.

14 |      However, the jury in this case found that defendant Briskey acted *without* probable

15 | cause in detaining and arresting plaintiff, and did so using unreasonable force.  Dkt. No. 96 at

16 | 2.  By their verdict, the jury found (1) that the plaintiff was unlawfully arrested and taken into

17 | custody and that Officer Briskey caused, authorized, encouraged, directed or assisted in this

18 | unlawful act or in procuring plaintiff's arrest without process, which caused plaintiff to suffer

19 | injury, damage, loss or harm; (2) that Officer Briskey used excessive force when he detained

20 | and arrested the plaintiff—i.e., force not "objectively reasonable" under all of the

21 | circumstances; and (3) that under all of the circumstances known to the officer at the time, an

22 | objectively reasonable police officer would not have concluded there was a fair probability that

23 | the plaintiff had committed or was committing a crime.  Dkt. No. 96 at 2-3; Dkt. No. 90

24 |

25 |     [4]  This is despite the fact that plaintiff did not so testify and that Officer Briskey testified

26 | that it was indeed possible that plaintiff interpreted his command as having been directed not at plaintiff, but rather someone else in the vicinity.  *See* Dkt. No. 124, Ex. D at 29-30 (Briskey Dep.).

ORDER ON POST-TRIAL MOTIONS
PAGE – 6

01  (Instructions 15, 17, 19).  As a result, the jury found for the plaintiff on his § 1983 unlawful

02  arrest claim, his state law false arrest claim, and his § 1983 excessive force claim.   Dkt. No. 96

03  at 2-3.

04         Viewing all the evidence in a light most favorable to the plaintiff, the Court cannot

05  conclude that a reasonable police officer could have believed that his conduct was lawful under

06  the circumstances presented, in light of clearly established law and the information he

07  possessed at the time.  *Edgerly v. City & County of San Francisco*, 495 F.3d 645, 654 (9th

08  Cir. 2007).  Although Officer Briskey initially possessed reasonable suspicion that criminal

09  activity was afoot, that suspicion was dispelled once the unarmed and nonaggressive plaintiff

10  understood that Officer Briskey was speaking to him, stopped, turned, gestured to his plainly

11  visible "STAFF" shirt and I.D. badge in a non-aggressive manner, and explained that he was a

12  staff member of the Rainier Vista Boys and Girls Club.  Officer Briskey ignored this

13  information[5] and, according to testimony proffered at trial, immediately struck plaintiff in the

14  face and knocked him to the ground.  The Court finds that under these circumstances, there

15  was no probable cause or arguable probable cause for the arrest, and a reasonable police

16  officer would have made further inquiry before effecting a warrantless arrest in such a forcible

17  manner.  *See Chew v. Gates*, 27 F.3d 1432, 1440 n.5 (9th Cir. 1994).  Nor can the Court

18  conclude that an objectively reasonable police officer could have concluded that there was a

19  fair probability that plaintiff had "willfully hinder[ed], delay[ed], or obstruct[ed]" Officer

20  Briskey in the discharge of his duties in this regard, or had otherwise "intentionally prevent[ed]

21  or attempt[ed] to prevent" Officer Briskey from arresting him. R.C.W. §§ 9A.76.020(1),

22

23  [5] Evidence presented at trial supports the conclusion that, contrary to his testimony, Officer
Briskey was well aware of but ignored the obvious fact that plaintiff was a staff member intent on

24  keeping the peace on the night in question, wearing a conspicuous staff t-shirt and a visible
identification badge.  The Court eschews an exhaustive analysis of these facts, but points, for

25  example, to physical evidence such as the fact that, in plaintiff's booking photo, his
undershirt—i.e., the only shirt defendants claim plaintiff was wearing—was in pristine condition

26  despite the undisputed fact that plaintiff was knocked to the ground (on a construction site) by
Officer Briskey.  This white shirt could have stayed so clean only as an undershirt.

ORDER ON POST-TRIAL MOTIONS
PAGE – 7

01 .040(1); *see also* S.M.C. §§ 12A.16.010, .050.

02      Moreover, in light of the fact that Officer Briskey possessed only reasonable suspicion

03 and not probable cause, the Court cannot conclude that the actual force used by Briskey was

04 objectively reasonable as a matter of law, even if not amounting to an intentional tort. *Santos*

05 *v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 396

06 (1989)).  In addition to the evidence presented regarding the actual force used, there was

07 evidence presented at trial that plaintiff did not assume an aggressive or fighting stance, did not

08 obstruct or resist arrest and that the overall situation faced by the officer was neither explosive

09 nor dangerous.  And while the jury heard conflicting testimony regarding plaintiff's behavior

10 once physically apprehended, the Supreme Court has "consistently held that a refusal to

11 cooperate, without more, does not furnish the minimal level of objective justification needed

12 for a detention or seizure," much less a basis upon which to exact unreasonable physical force

13 in making a warrantless arrest, especially when any reasonable suspicion of criminal activity

14 would have been dispelled upon a reasonable officer's minimal investigation of the

15 circumstances in this case. *See Bostick v. Florida*, 501 U.S. 429, 437 (1992). .

16      In sum, the Court concludes that a finding of qualified immunity, probable cause, or

17 reasonable force is not available as a matter of law in this case.  Furthermore, the Court cannot

18 conclude that the evidence, construed in a light most favorable to the plaintiff, "permits only

19 *one reasonable conclusion*"—i.e., that espoused by the defendants—in this case. *Josephs*, 443

20 F.3d at 1062.  At the very least, the evidence in this case points more than one way, and

21 reasonable minds could differ over the jury's verdict.  Accordingly, the Court will not disrupt

22 the findings of the jury. *Id.*; *Bell*, 341 F.3d at 865.  Defendants' Rule 50(b) motion is denied.[6]

23

24

_____

25      [6] The Court also concludes that common law qualified immunity for the state law claims

26 would likewise be improper in this case based on the fact that Officer Briskey's conduct was not
reasonable under governing law. *See Staats v. Brown*, 139 Wash.2d 757, 780, 991 P.2d 615, 628
(2000).

ORDER ON POST-TRIAL MOTIONS
PAGE – 8

01    B.    Motion for a New Trial

02        Under Fed. R. Civ. P. 59, a trial court may grant a new trial "'only if the verdict is

03 contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to

04 prevent a miscarriage of justice.'" *Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007)

05 (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)).  Such motion may be

06 granted on insufficiency of evidence grounds "only if the verdict is against the 'great weight' of

07 the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *Incalza*

08 *v. Fendi North America, Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) (internal quotations

09 omitted).  However, in reviewing a motion for a new trial, unlike that of a renewed Rule 50(b)

10 motion, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need

11 not view the evidence from the perspective most favorable to the prevailing party." *Landes*

12 *Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

13        The Court denies the defendants' motion regarding the issue of probable cause.  First,

14 defendants do not argue, and the Court does not find, that the jury's verdict was based on false

15 or perjurious evidence.  Second, the Court cannot conclude that the verdict is contrary to the

16 clear or great weight of the evidence presented at trial.  This evidence included, for example,

17 highly credible testimony that plaintiff jogged directly in front of Defendant Officer Briskey

18 wearing his red staff shirt; that Officer Briskey ignored this fact and all others plainly indicating

19 that plaintiff was a staff member of the Boys and Girls Club; that, in *Officer Briskey's* opinion,

20 his initial command could reasonably have been directed at someone other than the plaintiff,

21 see Dkt. No. 124, Ex. D at 29-30 (Briskey Dep.); that indeed plaintiff, after jogging directly

22 past Officer Briskey several seconds earlier, did not believe the officer was talking to him when

23 he so commanded; that a second and final command was delivered as Officer Briskey ran

24 directly toward plaintiff from a short distance away; and that upon realizing that Officer

25 Briskey was yelling at him, plaintiff stopped and attempted to comply with the officer's

26 commands.  Dkt. No. 99, Ex. A at 22, 27-28.

ORDER ON POST-TRIAL MOTIONS
PAGE – 9

01        The defendants place enormous emphasis on wildly inconsistent testimony regarding

02   the approximate distance between Officer Briskey and plaintiff at the time of his second

03   command to and arrest of the plaintiff.  *See* Dkt. No. 98 at 3-7.  However, either version of

04   this story supports the jury's verdict, which is not contrary to the clear weight of the evidence.

05   If *Officer Briskey's* version of the facts is believed, he charged toward the plaintiff from a mere

06   ten feet away while simultaneously giving his command to "Stop, get on the ground!" as

07   plaintiff stopped and notified the officer that he was a staff member.  This version paints

08   Officer Briskey's actions as the only alternative and provides virtually no time for plaintiff to

09   fully comply with the officer's command; plaintiff could not have placed himself on the ground

10   any quicker than Officer Briskey did by the forearm strike to the face, the force of which flung

11   plaintiff into a grouping of rocks alongside the sidewalk near the Club.  *See* Dkt. No. 124, Ex.

12   D at 19, 21, 27 (Briskey Dep.); *see also id.* Ex. A at 25-29 (Bradford Testimony), *and* Ex. B.

13   at 8-10 (Smith Testimony).  Plaintiff's version, as re-characterized by the defendants, places

14   Officer Briskey much farther away from the plaintiff at the time his "Stop, get on the ground!"

15   command was made.  Dkt. No. 99, Ex. A at 114, 116 (Bradford Testimony); *but see id.* at 116

16   (equivocating as to distance), *and* Dkt. No. 41, Ex. C at 60-61 (Bradford Dep.) (estimating

17   distance at ten feet).  This version, however, supplies Officer Briskey with no reasonable

18   grounds for believing that plaintiff—fully stopped, facing the officer in a non-aggressive stance

19   with his hands in the air, holding his identification badge and explaining that he is a staff

20   member—had been, was, or would be committing a crime, and surely provides no basis for

21   violently knocking, tackling, and slamming plaintiff to the ground.  The Court could speculate

22   indefinitely as to which of these versions the jury believed.  However, what the parties have

23   done by their post-trial motion is simply underscore the fact that this issue is one better suited

24   to the province of the jury.

25        Ultimately, the jury concluded that under all of the circumstances known to the officer

26   at the time, an objectively reasonable police officer would not have concluded there was a fair

ORDER ON POST-TRIAL MOTIONS
PAGE – 10

01  probability that the plaintiff had committed or was committing the crime of obstruction or

02  resisting arrest under state law or municipal code provisions on which the Court specifically

03  instructed the jury.  Dkt. No. 96 at 2; Dkt. No. 90 (Instruction 15).  After independently

04  weighing the evidence and assessing the credibility of each witness, the Court does not and

05  cannot conclude that the jury's verdict is against the great weight of the evidence, is seriously

06  erroneous, or otherwise amounts to a miscarriage of justice.  *Incalza*, 479 F.3d at 1013.

07        C.      New Trial Based on Inconsistent Verdicts Under Fed. R. Civ. P. 49(b), 59(e)

08        As an alternative to dismissal upon a finding of probable cause and/or grant of qualified

09  immunity, the defendants request relief under the Seventh Amendment, Fed. R. Civ. P. 58, and

10  Fed. R. Civ. P. 59(e) for inconsistent verdicts.  Dkt. No. 98 at 21-24. Defendants specifically

11  refer to the verdicts on unlawful arrest and excessive force under § 1983, and the verdicts on

12  the state torts of false arrest and assault and battery.  *Id.*

13        1.      *Governing Law*

14        Federal Rule of Civil Procedure 49(b) authorizes a district court to "submit to the jury

15  forms for a general verdict, together with written questions on one or more issues of fact that

16  the jury must decide."  Rule 49(b)(3) and (4) govern inconsistent answers and authorize the

17  court, under Rule 58, to (1) approve an appropriate judgment; (2) direct the jury to further

18  consider its answers and verdict; or (3) order a new trial.  Fed. R. Civ. P. 49(b)(3)-(4).[7]

19        The defendants cannot prevail on this issue simply by establishing that the jury's

20  verdicts in this case *might* be or indeed are inconsistent.  Rather, "a court has a duty under the

21  Seventh Amendment to harmonize a jury's seemingly inconsistent answers if a fair reading

22  _____

23  [7]  A court may also alter or amend judgment in this regard under Rule 59(e) if "'(1) the

24  district court is presented with newly discovered evidence, (2) the district court committed clear
    error or made an initial decision that was manifestly unjust, or (3) there is an intervening change
    in controlling law.'"  *Duarte v. Bardales*, 526 F.3d 563, 567 (9th Cir. 2008) (internal quotation

25  omitted).  Rule 59(e) motions "should not be granted, absent highly unusual circumstances." *389
    Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  Here, defendants point to

26  no published Ninth Circuit decision applying Rule 59(e) to contest inconsistent verdicts, and the
    Court finds none.  Regardless, relief is inappropriate for reasons similar to those discussed below.

ORDER ON POST-TRIAL MOTIONS
PAGE – 11

01 allows for it." *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 771 (9th Cir. 2005) (citations

02 omitted). The court must ask "not whether the verdict necessarily makes sense under any

03 reading, but whether it can be read in light of the evidence to make sense." *White v. Ford*

04 *Motor Co.*, 312 F.3d 998, 1005 (9th Cir. 2002). The Ninth Circuit "do[es] not find

05 inconsistency lightly." *Norris v. Sysco Corp.*, 191 F.3d 1043, 1048 (9th Cir. 1999). The Ninth

06 Circuit has explained:

07 We are bound to find the special verdicts consistent if we can do so
under a fair reading of them. When faced with a claim that verdicts are
08 inconsistent, the court must search for a reasonable way to read the verdicts as
expressing a coherent view of the case, and must exhaust this effort before it is
09 free to disregard the jury's verdict and remand the case for a new trial.

10 *Id.* (internal quotation omitted).

11 ### 2.   *New Trial Is Not Warranted Based on Inconsistent Verdicts*

12 Here, there may be a substantial question regarding whether the defendants waived

13 their objection to any alleged inconsistency of the verdicts, because they did not object before

14 the jury was discharged. *See, e.g.*, *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d

15 1322, 1331 (9th Cir. 1995); *Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d

16 1351, 1354-55 (9th Cir. 1987). However, the Court eschews an exhaustive analysis of the

17 waiver issue because assuming for the sake of argument that defendants did not waive

18 inconsistency, the Court finds none.

19 The jury's § 1983 excessive force and state law assault and battery verdicts were not

20 irreconcilably inconsistent. *See Zhang*, 339 F.3d at 1038 (outlining standard). The jury's

21 verdict finding excessive force under § 1983 but not assault and battery under state law can be

22 harmonized with the evidence as conduct that was unreasonable under § 1983, but not an

23 intentional tort under state law. Furthermore, the elements of the claims and factors to be

24 considered for each claim are not the same. While battery requires the intent by Officer

25 Briskey to bring about a harmful contact that is unauthorized by state law, see Dkt No. 90

26 (Instruction 18), liability for excessive force under § 1983 requires only force that is

ORDER ON POST-TRIAL MOTIONS
PAGE – 12

01  unreasonable under the circumstances.  *Id.* (Instruction 17).  Finally, these verdicts can be

02  further harmonized when considering the fact that the jury, although finding that the force used

03  was unreasonable, did not find it of such a wilful, intentional, or deliberate nature so as to

04  warrant punitive damages in this case.  *See id.* (Instruction 24), *and* Dkt. No. 96 at 4.

05          There is also no irreconcilable inconsistency between the jury's false arrest verdict and

06  assault and battery verdict.  Only the element of injury is shared by both claims.  Moreover,

07  while battery required harmful contact and intent to bring about such contact, false arrest

08  required only that the plaintiff was unlawfully arrested and taken into custody and Officer

09  Briskey "caus[ing], authoriz[ing], encourag[ing], direct[ing] or assist[ing] in this unlawful act

10  *or in procuring plaintiff's arrest without process*."  *Compare* Dkt No. 90 (Instructions 18),

11  *with id.* (Instruction 19).  In other words, the false arrest claim did not *require* the jury to find

12  that Officer Briskey possessed the intent to commit a battery on plaintiff.  Nor did it require the

13  jury to find that Officer Briskey acted within the scope of his authority or under color of law.

14  Instead, it hinged on whether Officer Briskey had probable cause to arrest plaintiff and take

15  him into custody, which the jury found lacking.

16          The defendants' post-trial motions are denied.

17          D.    Plaintiff's Motion for Court-Awarded Attorney's Fees

18          Pursuant to 42 U.S.C. § 1988, a district court may, in its discretion, award attorneys'

19  fees to the prevailing party in an action brought under 42 U.S.C. § 1983.  *See Hensley v.*

20  *Eckerhart*, 461 U.S. 424, 429 (1983).  The purpose of § 1988 is to ensure effective access to

21  the judicial process for private persons and to encourage the enforcement of federal civil rights

22  by enlisting the aid of counsel to act as "private attorneys general."  *Evans v. Jeff D.*, 475 U.S.

23  717, 732 (1986).  A prevailing plaintiff "should ordinarily recover an attorney's fee unless

24  special circumstances would render such an award unjust.'"  *Hensley*, 461 U.S. at 429

25  (quoting H.R. REP. NO. 94-1558, at 4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5912).  Here,

26  there is no dispute that plaintiff is a "prevailing party" for purposes of § 1988.

ORDER ON POST-TRIAL MOTIONS
PAGE – 13

01      In *Hensley*, the Supreme Court held that the prevailing party bears the burden of

02   establishing the appropriateness of its fee request.  *Hensley*, 461 U.S. at 433.  The Court

03   directed lower courts to "exclude from this initial fee calculation hours that were not

04   'reasonably expended,' including "excessive, redundant, or otherwise unnecessary" work.  *Id.*

05   at 434; *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)

06   (holding that for purposes of claiming a fee award pursuant to 42 U.S.C. § 1988 "counsel

07   bears the burden of submitting detailed time records justifying the hours claimed to have been

08   expended").  In exercising this judgment, however, courts should avoid using 20/20 hindsight

09   to determine if the attorney hours were necessary to obtain the relief obtained.  *See, e.g.*,

10   *Steinke v. Washington County*, 903 F. Supp. 1403, 1407 (D. Or. 1995).

11      To determine the appropriate fee award under § 1988, district courts must use the

12   lodestar method, which involves multiplying the number of hours the prevailing party

13   reasonably expended on the litigation by a reasonable hourly rate.  *See Camacho v. Bridgeport*

14   *Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (explaining that the Ninth Circuit requires

15   district courts to perform the lodestar calculation).  "While in most cases the lodestar figure is

16   presumptively reasonable, in rare cases" the court must decide whether to enhance or reduce

17   that figure based on an evaluation of twelve factors that are not already subsumed in the initial

18   lodestar calculation.  *Camacho*, 523 F.3d at 982; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d

19   67, 70 (9th Cir. 1975) (listing the factors).[8]

20      Here, counsel for plaintiff has submitted affidavits requesting attorneys' fees in the

21

22

---

23      [8] These factors include: (1) the time and labor required; (2) the novelty and difficulty of

24   the issues involved; (3) the skill required to perform the legal services properly; (4) the preclusion
    of other employment by an attorney due to acceptance of the case; (5) the customary fee; (6)

25   whether the fee is fixed or contingent; (7) time limitations imposed by a client or the
    circumstances; (8) the amount in question and results obtained; (9) the experience, reputation, and

26   ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
    professional relationship with the client; and, (12) awards in similar cases.  *Kerr*, 526 F.2d at 70.

ORDER ON POST-TRIAL MOTIONS
PAGE – 14

01  amount of $261,481.88[9] and awardable costs of $4,507.84.  Dkt. Nos. 101-18.[10]  Mr.

02  Lembhard G. Howell, plaintiff's lead counsel, cites an hourly rate of $480 and 245.7 hours

03  expended, for a total fee of $117,936.  Dkt. No. 101 at 4; Dkt. No. 102 (Howell Decl.).  Mr.

04  Daniel A. Mares, Mr. Howell's associate, lists an hourly rate of $200 and cites 244.7 hours

05  spent, for a total fee of $48,940.  Dkt. No. 101 at 4; Dkt. No. 103 (Mares Decl.).  Mr.

06  Courtland T. Shafer assisted Mr. Howell during the second day of trial.  He lists a billing rate

07  of $250 per hour and cites 11.8 hours of work, for a total fee of $2,950.  Dkt. No. 101 at 4;

08  Dkt. No. 106 (Shafer Aff.).  Mr. Shakespear M. Feyissa assisted Mr. Howell on the third day

09  of trial, bills at $175 per hour and cites 17.15 hours of work for a total fee of $3,001.25.  Dkt.

10  No. 101 at 4; Dkt. No. 105 (Feyissa Aff.).  Finally, plaintiff's counsel's legal assistant, Ms.

11  Penny Egger, performed 33.2 hours of work at $45 per hour for a total of $1,494.  Dkt. No.

12  101 at 9; Dkt. No. 104 (Egger Decl.).

13      Defendants object to most of these fee requests as unreasonable on numerous grounds.

14  Dkt. No. 126 at 4-13.  In addition, defendants insist that a downward departure is proper

15  based on the *Kerr* factors.  *Id.* at 14-17.  Counsel for the plaintiff disagrees, and insists that a

16  50% multiplier is appropriate based on the undesirability of the case and the exceptional results

17  achieved.  The Court addresses each of these arguments in turn.

18

19

20

21

22      [9]  Mr. Howell has recently added eight hours to this total, and Mr. Mares sixteen hours,
    for their work in responding to defendants' post-trial motions, which they claim were overlength.
23  According to Mr. Howell, this work increases the total fee request to $268,521.88.  Dkt. No. 128
    at 6.  The Court has reviewed the materials submitted, and will award half of this additional
24  requested time.

25      [10]  Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorneys' fees
    shall be allowed s of course to the prevailing party unless the court otherwise directs."  *See also*
26  28 U.S.C. § 1920.  The requested costs have been granted.  Dkt. No. 125.

ORDER ON POST-TRIAL MOTIONS
PAGE – 15

1.   *Lodestar Calculation*

a.   Reasonable Hourly Rate

"Reasonable fees" under § 1988 are "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The prevailing party bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.*

i.   *Mr. Howell*

Plaintiff's lead attorney, Mr. Howell, insists that $480 per hour is a reasonable rate. In support of this contention, Mr. Howell includes the detailed declarations of other civil litigators of comparable skill, experience and reputation as Mr. Howell.  *See* Dkt. Nos. 107-115.

After careful review of the briefs, Mr. Howell's declaration and all others filed on his behalf, the Court concludes that an hourly rate of $400 is most appropriate for Mr. Howell in this case.  Mr. Howell has practiced law for over forty years.  He has spent most of that time litigating civil rights cases, with a particular emphasis on police misconduct litigation.  He is an extremely skilled, dedicated, and experienced lawyer in the field of civil rights litigation and enjoys the respect and admiration of lawyers and judges alike.

The declarations from other attorneys in the locality span a range of approximately $300 to $650 per hour regarding the reasonable rate.  *See* Dkt. No. 108 at 2, ¶ 7 (Schoichet Decl.) (charging at $300 per hour); Dkt. No. 110 at 2, ¶ 5 (Andrus Decl.) (charging $505 per hour, although engaged primarily in corporate finance counseling, not civil rights litigation); Dkt. No. 114 at 2, ¶ 2 (Roe Decl.) (charging $425 per hour, but reporting approval at $400 per hour in federal courts in Oregon and Washington); Dkt. No. 107 at 2, ¶ 6 (Burman Decl.) (noting range of $400 to $650 for litigation partners comparable to Mr. Howell in skill,

experience, reputation).  Furthermore, in 2005, Mr. Howell claimed and this court accepted

$300 per hour as the rate reasonably and customarily charged in the locality for  legal services

in a § 1983 case.  *See Thomas v. City of Tacoma*, 2005 WL 2254005, *7 (W.D. Wash. 2005)

(unpublished disposition).  Based upon all of these facts, the Court concludes that a rate of

$400 per hour for Mr. Howell is reasonable in this case.

ii.     <em>Mr. Mares</em>

The Court concludes that a rate of $200 per hour is appropriate for Mr. Mares in this

case.  Though he possesses only four-and-a-half years of litigation experience, he has acted as

co-counsel and sole counsel on multiple occasions in civil rights cases involving claims similar

to those brought in the instant case, which includes more than a dozen civil rights cases filed in

state and federal courts in Washington including a large, multi-plaintiff federal civil rights case

against the City of Tacoma and members of its police force.  *See* Dkt. No. 103 (Mares Decl.);

Dkt. No. 130 (Mares Decl.).  He was also admitted *pro hac vice* in California for a six-week

civil trial.  Dkt. No. 103 (Mares Decl.).  Mr. Mares handled much of the pretrial briefing in this

case, and the $200 hourly rate requested is appropriate.[11]

iii.     <em>Mr. Shafer</em>

The Court concludes that an hourly billing rate of $200 for Mr. Shafer is more

appropriate than the $250 rate he requested.  It is undisputed that Mr. Shafer was not an

attorney of record in this case and was asked by Mr. Howell to substitute for Mr. Mares on

day two of the trial when Mr. Mares became unavailable for personal reasons.  *See supra*,

n.10.  Mr. Shafer establishes no trial experience or civil rights litigation experience, no

particular experience with the instant case, and his "on call" or "as needed" participation in this

---

[11] Mr. Mares served as second chair to Mr. Howell on the first day of trial but was unable to participate in the remaining days of trial as his wife went into labor and gave birth to their first child.  Mr. Shafer and Mr. Feyissa stepped in to assist Mr. Howell for the remaining two days of trial.  There is no evidence that either of these men performed any additional substantive litigation assistance to Mr. Howell before, during or after the trial in this case.

ORDER ON POST-TRIAL MOTIONS
PAGE – 17

01 case does not warrant a greater hourly fee than that approved for Mr. Mares.

02                                            iv.    *Mr. Feyissa*

03           The Court finds that the requested rate of $175 per hour is appropriate for Mr. Feyissa

04 in this case.  Although defendants dispute the amount of reasonable compensable hours for Mr.

05 Feyissa, they do not dispute that $175 per hour is a reasonable rate.

06                                            v.    *Ms. Egger*

07           In *Missouri v. Jenkins*, 491 U.S. 274 (1989), the Supreme Court held that a

08 "reasonable attorney's fee" provided for by statute should compensate not only the attorneys,

09 but also the work of paralegals and support staff "whose labor contributes to the work product

10 for which an attorney bills her client." *Id.* at 285.  Here, Ms. Egger performed paralegal work

11 including deposition summaries and trial preparation.  *See* Dkt. No. 101 at 9; Dkt. No. 104

12 (Egger Decl.).  Defendants do not dispute that this work was performed, nor do they attack

13 Ms. Egger's billing rate.  The Court concludes that concludes that a rate of $45 per hour is

14 appropriate for Ms. Egger in this case.

15                               b.    <u>Reasonable Amount of Time Expended</u>

16           As explained above, the party requesting court-awarded attorneys' fees must submit

17 detailed time records justifying the hours claimed to have been expended.  *Chalmers*, 796 F.2d

18 at 1210; *Wininger v. SI Management L.P.*, 301 F.3d 1115, 1126 (9th Cir. 2002).  The court

19 may adjust these hours downward if it believes the documentation to be inadequate, or if the

20 hours were duplicative, excessive, or unnecessary.  *Chalmers*, 796 F.2d at 1210.

21                                            i.    *Mr. Howell*

22           Mr. Howell requests compensation for 253.7 hours worked in this case.  Dkt. No. 101

23 at 4; Dkt. No. 128 at 6.  Defendants attack Mr. Howell's time-keeping as inaccurate and not

24 contemporaneous, and the time itself as excessive, portions not reasonably necessary, and

25 portions related to different or unsuccessful claims. Dkt. No. 126 at 5-10.  The Court

26 concludes that **244.7** hours were reasonably expended by Mr. Howell in this case.

ORDER ON POST-TRIAL MOTIONS
PAGE – 18

01  Furthermore, the Court finds that each of these hours were reasonable necessary in the

02  prosecution of plaintiff's case.

03          While it could be said that Mr. Howell produced some non-contemporaneous time

04  record, it is equally true that certain of Mr. Howell's *contemporaneous* time records show that

05  he did not claim time for certain lengthy periods of time during the middle of this litigation.

06  *See, e.g.*, Dkt. No. 129, Exs. A and B (contemporaneous records indicating time worked but

07  not claimed from March 11 to March 20, 2008 and April 21 to May 4, 2008).  Furthermore,

08  Mr. Howell claimed little time during much of the pleading and motion stages of the case, due

09  to his delegation of pretrial work to Mr. Mares.  For some of these activities, Mr. Howell's

10  reported hours appear minuscule and even understated.  *See, e.g.*, Dkt. No. 102, Ex. B at 3, ¶

11  90-91 (claiming only 1.8 hours in reviewing and revising lengthy summary judgment

12  opposition); *id.* Ex. B at 3, ¶ 87, ¶ 93, ¶ 95 (claiming only .5 hours for digesting defendants'

13  summary judgment papers and the Court's summary judgment opinion).  Moreover, The Court

14  finds that the time records evince billing judgment on the part of Mr. Howell.

15          Mr. Howell has also adequately addressed defendants' attack on the three sixteen-hour

16  days Mr. Howell claims for the trial dates of May 13, 14, and 15, 2008.  The defendants insist

17  this schedule would require Mr. Howell to work from 5:00 a.m. until midnight, "without

18  taking any time for meals, to relieve himself or do anything else."  Dkt. No. 126 at 6.  The

19  Court disagrees.  It is undisputed that after Mr. Mares' sudden absence from the trial on May

20  12, see *supra* n.10, Mr. Howell was without substantive trial assistance, requiring him to add

21  to the already lengthy schedule attorneys invariably keep during trial.  Specifically, the record

22  reflects that Mr. Howell would arrive at his office at 7:15 a.m., work through the daily lunch

23  recess, return to his office after the daily recess to work until 7:00 or 8:00 p.m., at which time

24  he would drive home to nap, returning to his office at 1:00 or 2:00 a.m. and work until 4:00

25  a.m. *See* Dkt. No. 128 at 3; Dkt. No. 129 at 1-2 (Howell Decl.).

26          The Court also rejects in part defendants' argument, presented without authority,

ORDER ON POST-TRIAL MOTIONS
PAGE – 19

regarding the time Mr. Howell spent at court waiting for the jury's verdict.  The Court ordered

counsel for both parties to remain within fifteen minutes of the courthouse while the jury

deliberated.  Pursuant to that order, Mr. Howell remained at the courthouse on behalf of his

client.  During that time, Mr. Howell was somewhat limited in the type and quality of services

he could perform for his other clients.  However, the Court is also aware of the fact that Mr.

Howell's office is located in downtown Seattle, within a fifteen minute drive of the courthouse,

and in light of the improvements in electronic communication devices, he could have engaged

in productive work on behalf of other clients while waiting for the verdict, whether in court,

near the courthouse, or back at his office.  Accordingly, the Court concludes that only 5 of the

9 hours and 20 minutes Mr. Howell spent awaiting the jury's verdict were reasonably incurred.

*Compare Roberts v. Interstate Distributor Co.*, 242 F. Supp. 2d 850, 860 (D. Or. 2002)

(concluding that each hour attorney spent waiting for return of jury verdict was compensable

where court had ordered counsel for both parties to remain within fifteen minutes of

courthouse while jury deliberated, where counsel's office was located *forty-five* miles from the

courthouse), *with Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006) (similar fees

excluded where counsel's office was located in city where trial was held).[12]

The Court concludes that the reasonable hourly rate of $400, multiplied by the 244.7

hours expended, results in a total attorney's fee award of **$97,880** to Mr. Howell.

ii.    *Mr. Mares*

Mr. Mares requests compensation for 260.7 hours worked in this case.  Dkt. No. 101

at 4; Dkt. No. 128 at 6.  Defendants attack this request for many of the same reasons regarding

that of Mr. Howell.  Dkt. No. 126 at 10-12.  For similar reasons to those stated above for Mr.

---

[12]   The Court arrives at the 9 hours and 20 as follows:  On May 16, 2008, the jury began
its deliberations at 1:20. Dkt. No. 91.  At 4:40 p.m., the Court advised counsel of several
questions from the jury and answered those questions in the presence of the jury, after which time
the jury was excused for the weekend.  *Id.*  The following Monday, May 19, 2008, the jury
deliberated from 8:50 a.m. until 3:45 p.m., when the jury then announced it had a verdict. Dkt.
No. 95.

ORDER ON POST-TRIAL MOTIONS
PAGE – 20

01   Howell, the Court declines to make an across-the-board reduction of Mr. Mares hours solely

02   because some of his time records were not kept contemporaneously.  All but 0.6 claimed hours

03   were recorded contemporaneously.  *See* Dkt. No. 130 at 2, ¶ 5 (Mares Decl.).  Nor will the

04   Court reduce hours (for either Mr. Howell or Mr. Mares) based on the alleged "unrelated"

05   unsuccessful claims.  Specifically, the Court does not find that plaintiff's unsuccessful claims of

06   illegal seizure, abuse of process, assault and battery, and malicious prosecution were "entirely

07   distinct and separate, . . . both legally and factually," from the claims on which the plaintiff

08   prevailed, i.e., unlawful arrest, excessive force, and false arrest.  *Webb v. Sloan*, 330 F.3d

09   1158, 1168 (9th Cir. 2003).  Each of the claims in this case arose out of a common core of

10   facts—plaintiff's stop, arrest, and detention—and the circumstances before, during, and/or

11   following each of those instances.  *Id.* at 1169.  Furthermore, it is clear that some of the work

12   performed in connection with the merits of certain of plaintiff's unsuccessful claims (e.g.,

13   illegal seizure, outrage, or assault and battery) aided the work performed on the merits of the

14   successful claims (e.g., unlawful arrest, false arrest, and excessive force).  *Id.* (citing *Schwarz*

15   *v. Secretary of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995).

16        Moreover, the record reflects that very little time was spent on the municipal liability

17   claim against the City of Seattle brought under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658

18   (1978).  The four hours Mr. Mares' spent on this work will not be compensated as the claim

19   did not succeed and was legally and factually distinct from the successful claims.  Contrary to

20   the defendants' allegations, no work was performed on the *Monell* claims for the pretrial

21   statement, opening statement or closing argument.  *See* Dkt. No. 130 at 2, ¶ 6 (Mares Decl.).

22   Mr. Mares took no depositions.  *Id.*  Defendants propounded five interrogatories related to the

23   *Monell* claims, the questions and answers of which span less than two pages.  *See id.*, Ex. A. at

24   2-3.

25        The Court finds that other claimed hours of Mr. Mares should be reduced as excessive

26   or unnecessary.  The Court reduces 6.4 hours of Mr. Mares' November 2007 work performed

ORDER ON POST-TRIAL MOTIONS
PAGE – 21

01   in an attempt to extend the expert witness deadline, as this excessive work was the result of

02   plaintiff's own failure to meet the original deadline.  The Court likewise excludes one hour of

03   Mr. Mares' work (of 3 hours requested) in preparing and personally serving requests for

04   admissions on the defendants on December 3, 2007.  Personally serving requests for

05   admissions requires no law degree and only a minimal amount of skill.  Furthermore, the Court

06   excludes as excessive 6 hours of Mr. Mares' work in preparing jury instructions in this non-

07   complex § 1983 trial, and twenty hours of Mr. Mares' time preparing an opening statement.

08          Accordingly, a total of 45.4 hours will be deducted from Mr. Mares' time request.  The

09   Court concludes that the reasonable hourly rate of $200, multiplied by **215.3** hours expended,

10   results in a total attorney's fee of **$43,060** to Mr. Mares.

11                              iii.    *Mr. Shafer*

12          The Court excludes Mr. Shafer's time spent coordinating his schedule with that of Mr.

13   Howell, and concludes that the reasonable hourly rate of $200, multiplied by the 10 hours

14   spent at trial, results in a total attorney's fee of **$2,000** to Mr. Shafer.

15                              iv.    *Mr. Feyissa*

16          Consistent with the Court's analysis of Mr. Howell's time spent awaiting the verdict,

17   see *supra* § III.D.1.b.i, the Court excludes the 1.5 hours claimed by Mr. Feyissa in this regard,

18   and concludes that the reasonable hourly rate of $175, multiplied by the 15.60 hours expended,

19   results in a total attorney's fee of **$2,730** to Mr. Feyissa.

20                              v.    *Ms. Egger*

21          The Court concludes that a rate of $45 per hour, multiplied by 33.2 hours of work in

22   this case, results in a total fee of **$1,494** for Ms. Egger.

23                     2.    *Adjustments to the Lodestar*

24          Once the Court has determined the lodestar, it may then assess whether it is necessary

25   to adjust that figure upward or downward based on several factors.  The Ninth Circuit

26   admonishes that "[i]n most cases[,] the lodestar figure is presumptively reasonable."

01   *Camacho*, 523 F.3d at 982.  In rare cases, however, the court must decide whether to enhance

02   or reduce that figure based on an evaluation of twelve factors that are not already subsumed in

03   the initial lodestar calculation.  *Id.*; *Kerr.*, 526 F.2d at 70 (listing the factors).  "The court need

04   not discuss each of the guidelines, so long as it discusses those most relevant to the particular

05   case."  *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988).

06        The Court determines that neither a fee multiplier nor a downward departure is

07   appropriate in this case.  This case was not overly complex and, although closely followed by

08   many, it presented limited discovery, routine legal issues, and focused primarily on the

09   credibility of the plaintiff vis-á-vis defendant Officer Briskey.  Moreover, the plaintiff in this

10   case was far from unattractive and the facts did not otherwise make the case so "undesirable"

11   as to warrant a fee multiplier.  Nor was the result obtained so "exceptional" as to warrant the

12   50% multiplier requested by plaintiff's counsel.  The size of the jury's damages award does

13   not, standing alone, make the result exceptional.  *See In re Washington Pub. Power Supply*

14   *Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).  The Court finds that plaintiff's counsel's

15   recovery was substantial, but not exceptional under governing law.

16        Accordingly, the Court awards to plaintiff's counsel a total attorneys' fee of **$147,164**.

17                       IV.   CONCLUSION

18        For the foregoing reasons, the Court ORDERS as follows:

19        (1)     Defendants' Motion to Amend Judgment as a Matter of Law, Judgment

20   Notwithstanding the Verdict, and/or Motion for a New Trial (Dkt. No. 98) is DENIED.

21        (2)     Plaintiff's Motion for Attorney's Fees Under 42 U.S.C. § 1988 (Dkt. No. 101)

22   is GRANTED in the amount specified by the Court above.

23        (3)     The Clerk of Court is directed to send a copy of this Order to the parties.

24        DATED this 16th day of July, 2008.

25

26                      JAMES P. DONOHUE
                        United States Magistrate Judge